Caldwell, J.
It appears from the evidence in the case, that the deceased, Doty, on the evening he lost his life, in company with three others, McCartney, White, and Jennings, went to Hagenbaugh’s tavern, where the defendant, Stewart, boarded; that Stewart came out of the house on to the pavement, where the deceased, and his company were standing; that an altercation ensued between the deceased and the defendant, about a small sum of money which the latter said the former owed him; that the deceased called the defendant a liar, to which the defendant replied that the deceased was a damned liar; that deceased then closed in upon defendant, that a fight ensued, that deceased very soon said he was stabbed, that he received several stabs, of which he died, and which were inflicted by defendant. It appears, too, from the evidence in the case, that after Stewart came out of the house, a few minutes intervened before the fight *304 commenced. The state called Nathaniel Criger, who testified to the circumstances attending the affray, and also testified that he came out of the house with Stewart, the defendant, On cross-examination, the defendant’s counsel propounded the following question: “ How were you employed, and how was the defendant employed, from the time you came out of the tavern till the fight began ?” This question was objected to by the counsel on the part of the state, and the court sustained the objection, and would not permit the question to be answered To this ruling of the 'court, the defendant excepted, and assigned the same as error on the record. We see nó objection, whatever, to the question. Indeed, we think, under the circumstances, it was one very proper to be asked. The witness had testified to facts that transpired between the time that he and Stewart came out of the house, and the time of the fight, as well as what happened during the fight. Now, to ask the witness how he was employed during the short interval before the fight occurred was a very pertinent question. It would tend to show whether the witness was situated so that he was able to note all that passed, whether his attention was directed solely to the parties, or whether he was engaged in anything else, that occupied a part' of his attention ; it might tend to east light upon the distinctness of his recollection of what was going on, and in many respects might be important. As to the other branch of the question, we regard it, in this case, as of vital importance. The defendant was on his trial for murder in the second degree, of which he has been convicted. If the killing was the result of a sudden quarrel, he could not be convicted of murder. How vitally important, then, to the proper determination of the case, it was, to prove what his conduct was, when he came out of the house, in the presence of the deceased and his party ? Bid he make any hostile demonstrations ? Did he do any act that was calculated to bring on a quarrel, or do any thing that showed that he wished to bring on a fight ? Or did he en gage in something that went to show no such disposition ? *305 What he did, or how he was employed, during this time, is a matter of so much importance, that the case could not be properly tried, without a scrutinizing inquiry into everything that was calculated to cast light upon it. We think the court clearly erred in not permitting this question to be answered. It would appear, from an interlineation in the bill of exceptions, that the question was objected to on the ground that it was not competent for the defendant to prove what Stewart did before Doty arrived. Now, the witness to whom this question was propounded, does not state that Doty and his company were standing about the tavern when Stewart came out; but it is fairly inferable from what he says that such was the fact. But the first witness called by the state, McCartney, and the only witness that had been examined before Criger, the witness to whom this question was propounded, had stated in his examination in chief, that Doty and his company were all standing about the tavern door, and gives the position of each, when Stewart came out.
On the part of the ptate, a witness by the name of White, who was one of the four persons who were in company with Doty, at the time of the fatal affray, and he having testified to the facts of the case, the defendant, on cross-examination, propounded the following question: “ State what conver sation took place on Monday evening, Sept. 9th, 1850, whilst McCartney, Doty, Jennings, and yourself were together, in relation to the subject-matter of dispute, between the defendant of the one part, and Doty, or McCartney, or either of them, on the other part, in relation to your going together to Stewart’s boarding house, and your purpose in going there ?”
This question was objected to by the counsel for the state, which objection was sustained by the court, and the quos t-ion was not permitted to be answered. This is assigned for error by the defendant. Several other questions were put by defendant’s counsel, varying the form of the question, *306 but substantially the same, which were also ruled out by the court. Now we think, under the circumstances of this case, as detailed in evidence, this was a proper question. It appears that on the Saturday evening before Doty and the same three persons, of whom the witness was one, had gone to this same house, that they and Stewart had got into a quarrel; that Doty and two of the others rushed at Stewart, and that some other persons interfered to prevent the affray, and that Stewart escaped behind the counter. When the same persons went there on Monday evening, it certainly was important to prove whether they went there with a hostile intent or not.
Anything that would tend to prove whether they went there with a hostile intent, or whether they went with some different intent, or happened there casually, might be important evidence. This question, although embodying some circumlocution, was calculated to ascertain what these persons went to this house for, on Monday evening; whether it had any reference to the existing quarrel between them and Stewart. If they had had any conversation, or had come to any agreement on the subject, it would be proper to prove it. If such had been the object of these persons, in this visit that night, it ought to be proved, although no information of the kind had been, in language, conveyed to the defendant. He might be able, when they met, from their manner and conduct, to discover their intention, although they had made no verbal expression indicating such intention. An agreement to do any thing, or go any where, is a fact; the conversation by which that agreement is made, is the legitimate evidence of that fact, and does not in any way come under the head of hearsay evidence. Whether there was evidence to prove any such intention on the part of Doty and his friends, is not the question; but whether the defendant might offer evidence tending to prove that fact. We think the court erred in not permitting this question to be answered.
*307 The defendant called a witness, Harvey B. Corwin, and propounded to him the following question: “ State whether, when Doty rushed upon Stewart, there was time enough for Stewart to escape, and get out of the way before Doty rushed on him, or not.”
This question is rather in a leading form. It is, however, a question of that peculiar kind, that to call the attention of the witness to the precise point on which information is wanted, it is almost impossible to avoid putting the question in a form more or less leading. No objection is noted as being taken to the question on the ground of form, and the fair inference is that the question was ruled out as substantially incompetent. We think the question was proper, and should have been answered. This may be said to be taking the opinion of the witness, and therefore objectionable. It is true, as a general rule, that the opinion of a witness cannot be given — the witness relating the facts from which the jury form their opinion. This rule, however, is not universal. The fact here sought to be proved, to wit, that the defendant could not avoid the conflict, could not be well proved to the jury by a statement of facts. The time occupied by the deceased, in passing from where he stood to the defendant, a distance of only a few feet, could hardly be stated, with any accuracy of measurement. The rapidity of his motion could not be calculated, so as to convey any very definite idea of his velocity. The particular position of the defendant in reference to surrounding objects, as well as the position of his body, at the time, were important items in determining the fact whether he could have got out of the way or not, and yet it would be very difficult, perhaps impossible, to convey any very clear idea to the jury, in reference to these matters. A variety of circumstances that could only be perceived, but not detailed, would constitute the aggregate from which the opinion would be formed. The person who had witnessed the transaction, could alone, most probably, form any idea on the subject that could be relied on with safety.
*308 For these errors, the judgment of the common pleas will he reversed. The other points raised in this case are numerous, and some of them important, but we do not think it necessary to proceed further into the examination of the case.